# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

CHRISTOPHER F. STURA,          )
                               )
                Plaintiff,     )
                               )
v.                             )          Case No. CIV-14-521-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
                Defendant.     )

## OPINION AND ORDER

Plaintiff Christopher F. Stura (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on August 19, 1964 and was 48 years old at the time of the ALJ's decision.  Claimant obtained his GED. Claimant has worked in the past as a dishwasher, laborer, seam presser, and mold press operator.  He also operated a bicycle shop at one time.  Claimant alleges an inability to work beginning September 1, 2008 due to limitations resulting from mental issues.

## Procedural History

On June 17, 2010, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On April 9, 2013, an administrative hearing was held by video before Administrative Law Judge ("ALJ") John W. Belcher with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. He issued an unfavorable decision on May 13, 2013. The Appeals Council denied review of the ALJ's decision on September 25, 2014. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform his past relevant work. The ALJ also determined Claimant could perform a full range of work at all exertional levels with non-exertional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to

provide a proper analysis at step four; (2) failing to properly evaluate the medical and other source evidence; and (3) failing to perform a proper credibility determination.

## Step Four Evaluation

In his decision, the ALJ found Claimant suffered from the severe impairments of depression, anxiety, and borderline personality disorder. (Tr. 23). After consultation with a vocational expert, the ALJ determined Claimant retained the RFC to perform his past relevant work as a dishwasher, laborer, seam presser, and mold press operator. (Tr. 32).

The ALJ also found Claimant retained the RFC to perform a full range of work at all exertional levels except that he could do simple work. The ALJ also limited Claimant to superficial contact with co-workers and supervisors and he should avoid contact with the public. He found that Claimant should not be in close proximity to co-workers. Additionally, Claimant should have clear, concrete and simple instructions. (Tr. 25). As a result, the ALJ determined Claimant was not under a disability from September 1, 20008 through the date of the decision. (Tr. 32).

Claimant contends the ALJ failed in his evaluation of Claimant's mental impairments at step four. In analyzing Claimant's ability to engage in his past work at step four, the ALJ must assess three phases. In the first phase, the ALJ must first

determine the claimant's RFC.  <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996).

On August 16, 2012, Claimant underwent a mental evaluation by Dr. Larry Vaught.  Dr. Vaught diagnosed Claimant with Bipolar II Disorder, Anxiety Disorder, NOS, and Intermittent Explosive Disorder.  (Tr. 548).  He administered the WAIS-III test and found Claimant obtained a Verbal IQ of 89, a Performance IQ of 80, and a Full Scale IQ of 84, placing him in the low average range.  (Tr. 545).  Dr. Vaught also completed a medical source statement.  He determined Claimant was markedly limited in the area of interacting appropriately with the public.  He also found Claimant was moderately limited in the functional areas of understanding and remembering complex instructions; carrying out complex instructions; interacting appropriately with supervisors and co-workers; and responding appropriately to usual work situations and to changes in a routine work setting.  He concluded that Claimant "is anxious in public.  He has anger issues and can 'explode.'" (Tr. 540-41).

The ALJ gave "great weight" to Dr. Vaught's opinion.  (Tr. 31).  Dr. Vaught's one marked limitation is accommodated in the ALJ's RFC with a provision for no contact with the public.  (Tr. 25).  The moderate limitations are addressed through the restrictions on interactions with co-workers and supervisors and

restriction to simple work.  Id.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001).  A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p.  The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id.  The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id.  However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).  The ALJ's RFC assessment was supported by substantial evidence.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work.  Id.  In making this determination, the ALJ may rely upon the testimony of the vocational expert.

<u>Doyal v. Barnhart</u>, 331 F.3d 758, 761 (10th Cir. 2003).  The ALJ in this case inquired of the vocational expert as to the demands of Claimant's past relevant work.  (Tr. 102).  The expert testified a seam presser required light work, unskilled, SVP at level 2.  He also stated that Claimant had been a tire changer requiring heavy exertion, semi-skilled with an SVP level of 3.  The expert testified that Claimant's job as a cashier was semi-skilled, light exertion with an SVP of 3.  A dishwasher is unskilled, an SVP of 2 and medium exertion.  A laborer is unskilled with an SVP of 2 and medium exertion.  A lawn worker is unskilled with an SVP of 2 and heavy exertion.  A delivery driver is semi-skilled  with an SVP of 3 and medium exertion.  A mold press operator is unskilled with an SVP of 2.  The exertion level to which the expert testified is recorded in the transcript as "inaudible."  (Tr. 102).

The vocational expert essentially parrots the content of the *Dictionary of Occupational Titles* without any analysis of the job as Claimant performed it.  This problem is exacerbated by the fact that Claimant's problems are primarily mental in nature and the scant information on Claimant's ability to perform the past relevant work in light of the mental demands of the various jobs is missing from the ALJ's examination of the expert and his decision. <u>Banks v. Colvin</u>, 547 Fed. Appx. 899, 904 (10th Cir. 2013).  On remand, the ALJ shall explore the mental demands of the various

jobs and whether Claimant can perform those jobs in light of the restrictions contained in the RFC.

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. <u>Winfrey</u>, 92 F.3d at 1023. This phase will be revisited on remand after re-evaluation at phase two.

Claimant also contends the ALJ failed to consider the moderate restriction found at step three upon Claimant's concentration, persistence, or pace at step four. The ALJ's step three findings do not necessarily translate to a work-related functional limitation for the purpose of arriving at an RFC. <u>Bales v. Colvin</u>, 576 Fed.Appx. 792, 798 (10th Cir. 2014)(unpublished). The medical source evidence does not support such a finding in this case. (Tr. 548).

### Evaluation of the Source Evidence

Claimant contends the ALJ failed to explain the "great weight" he gave to Dr. Vaught's opinion and why he only accepted some of the restrictions found by Dr. Vaught. The ALJ adequately explained the weight he gave the examiner's opinions and the basis for doing so. (Tr. 31); <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300 (10th Cir. 2003). Moreover, the ALJ largely incorporated Dr. Vaught's findings into the RFC, including restrictions in access to the

public. (Tr. 25).

Claimant also contends the ALJ failed to consider the testimony of Thomas Lewis, a medical social worker. The ALJ considered this testimony as a nonacceptable medical source. (Tr. 26-27). His discounting of the testimony is supported. Keyes-Zachary v. Astrue, 695 F.3d 1156, 1163 (10th Cir. 2012).

## Credibility Determination

The ALJ found Claimant's statements of the intensity, persistence, and limiting effects of Claimant's symptoms were not entirely credible. (Tr. 27). The ALJ considered Claimant's testimony of activities of daily living but discounted its weight in light of the objective medical evidence and statements he made to the consultative professionals. (Tr. 31).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the

symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). This Court finds that the ALJ's findings on credibility are affirmatively linked to the objective record and is supported by substantial evidence.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the

11

Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED this 30th day of March, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE